UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBRIE LOGAN,

            Plaintiff,               Case No. 4:16-cv-10585
                                         District Judge Linda V. Parker
v.                                 Magistrate Judge Anthony P. Patti

MGM GRAND DETROIT
CASINO,

            Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56(a) (ECF No. 67)

**I.**    **RECOMMENDATION**:  The Court should **GRANT** Defendant's motion for summary judgment (ECF No. 67), and with no remaining claims, dismiss the case.  However, the Court should **DENY** Defendant's request for an award of costs and attorney fees associated with this motion (ECF No. 67, PageID.1177,1206), as the issues on which this recommendation is based merited review by the Court.

**II.**    **REPORT**

      **A.**    **Background**

            **1.**    **Factual Background**

Plaintiff Barbrie Logan filed this lawsuit *in pro per* against Defendant MGM Grand Detroit Casino ("MGM"),[1] alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964.  (ECF No. 1, ¶¶ 1-2, PageID.2.)  The alleged facts underlying Plaintiff's complaint begin on August 1, 2007, the date she began her employment as a "culinary utility person" (CU) at MGM.  (ECF No. 1, ¶ 7, PageID.2.)  As a condition of employment, she paid dues and/or fees to UNITE HERE, Local 24, the labor union (ECF No. 1, ¶ 10, PageID.2), and began serving as a union steward around May 2008 (ECF No. 1, ¶ 11, PageID.3).  According to Plaintiff, throughout her employment with MGM, she was treated differently than similarly situated male employees with regard to overtime and training opportunities as well as job duties, and was subjected to derogatory comments.  (ECF No. 1, ¶¶ 12-13, 24, 26, PageID.3-4.)  The specific dates listed in the complaint, though, are all from 2014.  (ECF No. 1, ¶¶ 15, 17-19, 21-23, 25, 27, PageID.3-4.)  Plaintiff ultimately submitted her resignation from employment at MGM on November 26, 2014, effective December 4, 2014.  (ECF No. 1, ¶ 27, PageID.4; ECF No. 67-8; ECF No. 72, Exhibit 9, PageID.1575.)

---

[1] According to Defendant, "[t]he proper entity to be named is MGM Grand Detroit, LLC[.]"

The factual background of the case was further summarized by the Sixth

Circuit on appeal from the District Court's decision to grant MGM's initial

summary judgment motion in this case:

> [Plaintiff's] resignation was, she alleges, "due to discrimination
> caused by her employer" and therefore a constructive discharge.  R.
> 42, PageID 820.  On July 8, 2015—216 days later—[Plaintiff] filed a
> Charge of Discrimination with the Equal Employment Opportunity
> Commission (EEOC) against MGM.  In the Charge of Discrimination,
> [Plaintiff] alleged that she "was subjected to different terms and
> conditions of employment based on [her] sex . . . and in retaliation for
> . . . participation in protected activity."  R. 40-17, PageID 779.  The
> EEOC investigated [Plaintiff's] allegation and issued her a right-to-
> sue letter in November 2015.  On February 17, 2016—440 days after
> resigning—[Plaintiff] sued MGM for discrimination under Title VII.
>
> MGM moved for summary judgment, arguing that [Plaintiff's]
> employment agreement required her to commence any action arising
> out of her employment within six months and that her failure to do so
> barred her claim.  The magistrate judge assigned to the case agreed
> with MGM and issued a Report and Recommendation to that effect.
> The district court adopted the Report and Recommendation and
> entered summary judgment in favor of MGM.  [Plaintiff] timely
> appealed.

*Logan v. MGM Grant Detroit Casino*, 939 F.3d 824, 826 (6th Cir. 2019).

Ultimately, the Sixth Circuit reversed, holding that Plaintiff was entitled to a

300-day statutory limitations period because "a contractually shortened limitation

period, outside of an arbitration agreement, is incompatible with the grant of

substantive rights and the elaborate pre-suit enforcement mechanisms of Title VII.

*Logan*, 939 F.3d at 839.  Notably for consideration of MGM's instant motion for

summary judgment (ECF No. 67), the court also stated:

> We note that MGM has preserved a statute-of-limitations defense
> based on the 300-day limitation period of Title VII.  In its motion for
> summary judgment, MGM averred that "even if the limitations waiver
> were not considered, Plaintiff's Title VII claims are subject to a 300-
> day limitation period."  R. 40, PageID 559.  Some of [Plaintiff's]
> claims may be time-barred, even using a 300-day limitation period.
> Because that question was not before us, we will not resolve it here.

*Id*. at 839 n. 10.

### 2.    Instant Motion

Following the Sixth Circuit's reversal, MGM filed a second motion for

summary judgment, arguing entitlement to judgment as a matter of law because:

(1) applying the 300-day statute of limitations, Plaintiff's claims are time-barred;

and (2) regardless, Plaintiff cannot demonstrate a genuine issue of material fact as

to her Title VII discrimination or retaliation claims.  (ECF No. 67.)  In response,

Plaintiff asserts that: (1) the 300-day limitations period spanned from September

11, 2014 to the time she filed her EEOC Charge on July 8, 2015, and a number of

discriminatory acts occurred during that time period which led to her constructive

dismissal; (2) the Court may also consider unlawful employment actions taken by

MGM prior to September 11, 2014, because she is alleging continuous

discriminatory conduct as part of a hostile work environment; and (3) she "has

sufficiently set forward evidence that she was routinely assigned more burdensome

tasks, denied overtime and training opportunities offered to male coworkers, and

treated less favorably than male coworkers in retaliation for her union activity and

4

representation o[f] other female coworkers[.]" (ECF No. 72, PageID.1439; *see also* PageID.1453.) Finally, MGM filed a reply brief arguing that: (1) Plaintiff's claims are time-barred and fail to state disparate treatment based on gender; (2) Plaintiff failed to report any discrimination she alleges suffering after September 11, 2014; (3) Plaintiff cannot now claim a "continuing violation" as she never raised such a claim in her EEOC Charge; and (4) the Court should decline to consider the declaration attached to Plaintiff's response because it contains accusations that contradict her deposition testimony and are unsupported. (ECF No. 74.)

**B.     Standard**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); *cf*. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

6

The fact that Plaintiff is *pro se* does not reduce her obligations under Rule 56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

## C. Discussion

### 1. Applying the 300-day statute of limitations, any allegations of discrimination or retaliation that occurred prior to September 11, 2014, are time-barred

In holding that Plaintiff is entitled to a 300-day statutory limitations period, *Logan*, 939 F.3d at 839, the Sixth Circuit summarized the relevant law as follows:

> The EEOC process begins with a "charge" filed by the victim of
> discrimination.  Generally, the charge must be filed with the EEOC
> "within 180 days of the occurrence of the alleged unlawful
> employment practice." *EEOC v. Commercial Office Prod. Co.*, 486
> U.S. 107, 110 (1988) (citing 42 U.S.C. § 2000e-5(e)).  However, the
> filing period may be extended to 300 days in jurisdictions that have
> "State or local law prohibiting the unlawful employment practice
> alleged," 42 U.S.C. § 2000e-5(d), and "a State or local agency with
> authority to grant or seek relief from such practice," *id*. § 2000e-
> 5(e)(1).  Within such jurisdictions, known as "deferral jurisdictions,"
> the 300-day limitation period applies so long as the complaining
> employee has "instituted proceedings with [the applicable] State or
> local agency."  *Id*.; 29 C.F.R. § 1601.13.

*Logan*, 939 F.3d at 827.

Neither Plaintiff nor MGM challenge application of the 300-day statutory

limitations period, and both agree that Plaintiff filed her EEOC Charge on July 8,

2015, 300 days from September 11, 2014.  (ECF No. 67, PageID.1192; ECF No.

72, PageID.1453.)  However, the agreement between the parties ends there.

Plaintiff argues not only that she was subjected to a number of discriminatory acts −

between September 11, 2014 and December 4, 2014 − that led to her constructive

discharge, but also that none of her claims are time-barred because discriminatory

and retaliatory actions taken by MGM prior to September 11, 2014, are evidence of

continuing discriminatory conduct as part of a hostile work environment.  (ECF

No. 72, PageID.1453-1454.)  In contrast, MGM argues that Plaintiff failed to assert

a continuing violation of Title VII in her EEOC Charge, listing there only that the

alleged discrimination occurred between September and December 2014.  (ECF

No. 67, PageID.1192-1193; ECF No. 74, PageID.1674-1675.)  For the reasons that follow, I agree.

The Sixth Circuit "has recognized that an ongoing, continuous series of discriminatory acts may be challenged if one of those discriminatory acts occurred within the limitations period." *Phillips v. Cohen*, 3 F. App'x 212, 218 (6th Cir. 2001).  In other words, "[i]f a plaintiff can show that the defendant has engaged in a continuing violation, then a court may consider all relevant actions allegedly taken pursuant to an employer's discriminatory policy or practice, including those that would otherwise by time-barred.  *Id*.  There are two types of continuing violations.  "The first arises from an ongoing series of discriminatory acts, the second from a long-standing policy of discrimination." *Dendinger v. Ohio*, 207 F. App'x 521, 526 (6th Cir. 2006).

In *Nat'l R.R. Passenger Corp. v. Morgan*, the Supreme Court distinguished related discrete acts of discrimination (with the exception of hostile work environment claims) from continuing violations as follows:

> Morgan argues that the statute does not require the filing of [an EEOC] charge within 180 or 300 days of each discrete act, but that the language requires the filing of a charge within the specified number of days after an "unlawful employment *practice*."  "Practice," Morgan contends, connotes an ongoing violation that can endure or recur over a period of time.  In Morgan's view, the term "practice" therefore provides a statutory basis for the . . . continuing violation doctrine. This argument is unavailing, however, given that 42 U.S.C. § 2000e-2 explains in great detail the sorts of actions that qualify as "[u]nlawful employment practices" and includes among such practices numerous

9

discrete acts.  There is simply no indication that the term "practice"
converts related discrete acts into a single unlawful practice for the
purposes of timely filing.

536 U.S. 101, 110-11 (2002) (internal citations omitted).  Thus, "discrete

discriminatory acts are not actionable if time-barred, even when they related to acts

alleged in timely filed charges[,]" and the EEOC charge "must be filed within the

180- or 300-day time period after the discrete discriminatory act occurred."  *Id*. at

113.

Unlike discrete acts of discrimination, discrimination that is part of a hostile

work environment

"occurs over a series of days or perhaps years and, in direct contrast to
discrete acts, a single act of harassment may not be actionable on its
own.  Such claims are based on the cumulative effect of individual
acts . . . .  In determining whether an actionable hostile work
environment claim exists, the Court must look to 'all the
circumstances,' including 'the frequency of the discriminatory
conduct; its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it
unreasonably interferes with an employee's work performance."

*Ferguson v. Snow*, 185 F. App'x 456, 462 (6th Cir. 2006) (quoting *Morgan*, 536

U.S. at 116).

Plaintiff would like the Court to consider all of the individual acts of

"discrimination" listed in the declaration attached to her summary judgment

response and raised at her deposition to find a continuing violation of Title VII,

and to conclude that the 300-day statute of limitations need not be enforced.  In

10

other words, she would like the Court to find that alleged acts of discrimination which occurred prior to September 11, 2014 are not time-barred, and to consider those acts when evaluating her Title VII claims.  (ECF No. 72, PageID.1452-1454.)  But the Court should focus instead on the allegations in Plaintiff's EEOC Charge itself, and in her complaint.

A plaintiff must properly exhaust administrative remedies before filing a Title VII action by satisfying the following prerequisites: "(1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ('right-to-sue letter')."  *Granderson v. Univ. of Mich.*, 211 F. App'x 398, 400 (6th Cir. 2006).  The EEOC "charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'"  *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (quoting 29 C.F.R. § 1601.12(b)).

In her July 8, 2015 EEOC Charge under the heading "Discrimination Based On," Plaintiff checked the boxes for "sex" and "retaliation," and under "Date(s) Discrimination Took Place," she listed the earliest as September 12, 2014, and the latest as December 4, 2014.  Notably, in that same section of the Charge, she left unchecked the box for "Continuing Action."  (ECF No. 67-17; ECF No. 72, PageID.1415.)  For "The Particulars," she stated:

> I began employment with the above named employer on August 1, 2007 and was last employed as Culinary Utility.

11

In or around March 2014, I served as union representative for a
coworker filing a complaint of discrimination based on national
origin.  In or around September 2014 and up through the end of my
employment in December 2014, I was repeatedly denied overtime and
opportunities for advancement in my position.

Similarly situated comparators who did not engage in protected
activity and who are not of my sex were granted these opportunities
and overtime instead of me.

I believe I was subjected to different terms and conditions of
employment based on my sex (female) and in retaliation for my
participation in protected activity in violation of the Civil Rights Act
of 1964, as amended.

(ECF No. 67-17; ECF No. 72, PageID.1415.)

Based on the above, I see no way to conclude that, in her EEOC Charge,

Plaintiff alleged, let alone preserved, a continuing violation or hostile work

environment claim.  Not only did she fail to check the box for a continuing

violation, but she also made clear both in the body and in the form portion of the

Charge that the alleged discrimination took place specifically over a four-month

period between September and December 2014.  (ECF No. 67-17; ECF No. 72,

PageID.1415.)  Nor does Plaintiff appear to allege a continuing violation or hostile

work environment claim in her complaint.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that

were not included in his EEOC charge."  *Younis*, 610 F.3d at 361.  However,

because aggrieved employees—and not attorneys—usually file
charges with the EEOC, their *pro se* complaints are construed
liberally, so that courts may also consider claims that are reasonably

12

related to or grow out of the factual allegations in the EEOC charge. *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). As a result, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

*Younis*, 610 F.3d at 362. Although in her complaint Plaintiff asserts generally that *throughout her employment*, she was treated differently than similarly situated male employees, subjected to derogatory comments about sex, and given more burdensome and unreasonable job duties than similarly situated male team members (ECF No. 1, ¶¶ 12-13, 26, PageID.3-4), she only alleges specific facts related to these claims from 2014 (albeit some prior to September 11, 2014) (ECF No. 1, ¶¶ 17, 19, 21-22, 25, 27, PageID.3-4).

Accordingly, Plaintiff failed to exhaust any potential continuing violation or hostile work environment claim, and any claims related to discriminatory and unlawful employment practices that allegedly occurred prior to September 11, 2014, are time-barred. The Court must, then, determine what claims remain, as Plaintiff includes a significant amount of alleged discriminatory and retaliatory acts in her summary judgment response that occurred well outside the relevant time period. When narrowed down to September 11, 2014, through her last day of employment on December 4, 2014, and looking to her EEOC Charge and complaint, Plaintiff appears to claim retaliation for engaging in the protected activity or representing fellow employees in discrimination grievances as a union

steward, and sex discrimination on three bases: (1) training opportunities; (2) overtime; and (3) terms and conditions of employment, including job responsibilities.  I will consider each in turn.

### 2.    Plaintiff's claim of sex discrimination

Where, as is the case here, sex discrimination claims under Title VII are based on circumstantial evidence, the burden-shifting framework in *McDonnell-Douglas Corp. v Green*, 411 U.S. 792, 802-04 (1973), applies.  *White v. Baxter Health Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).  "Under this framework, the plaintiff bears the initial 'not onerous' burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence."  *Id.*  "To establish a *prima facie* case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees."  *Id.*

If a plaintiff establishes a *prima facie* case of discrimination or retaliation, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment decision.  *McDonnell-Douglas*, 411 U.S. at 802. Finally, if the defendant offers such a reason, the burden shifts to the plaintiff to show that the proffered reason is merely a pretext for discrimination.  *Id.* at 804.

14

However, the burden of persuasion rests with the plaintiff at all times.  *Hunter v. Sec'y of the Army*, 565 F.3d 986, 996 (6th Cir. 2009).

> ### a.    MGM is entitled to summary judgment on Plaintiff's sex discrimination claim related to training

Again, Plaintiff claims sex discrimination in part on the basis that she was denied training opportunities offered to male coworkers.  (ECF No. 1, ¶ 24, PageID.4.)  Specifically, upon a review of Plaintiff's deposition transcript and other documents attached to the instant motion and response, as well as the declaration Plaintiff attached to and cited throughout her response, she alleges that she was denied participation in a Serve-Safe course offered in April 2014, before the time period at issue (Pl. Dep. Trans., ECF No. 67-2, PageID.1231-1232), and left out of on-the-job training that a male CU Jorden Wade was provided (ECF No. 67-2, PageID.1232-1234), about which she complained at union grievance meetings from September to November 2014 (Plaintiff's Declaration, Exhibit 8, ECF No. 72, PageID.1545; BOH Meeting Minutes 10/30/14, Exhibit 6, ECF No. 72, PageID.504).  However, even viewing this evidence in a light most favorable to Plaintiff, she has failed to establish a *prima facie* case of employment discrimination on this basis because she has not met her burden of showing that the alleged lack of training opportunities amounted to an adverse employment action under Title VII.

15

An adverse employment action requires a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White*, 533 F.3d at 402 (citation omitted). The employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461 (6th Cir. 2000) (internal quotation marks omitted); *see also id.* at 462 ("*[D]e minimis* employment actions are not materially adverse and, thus, not actionable.").

Courts have held that for failure to train to constitute an adverse action, an employee must show that "his inability to attend such training had [a] material impact on the terms and conditions of his employment." *Wheeler v. Chertoff*, No. C 08-1738 SBA, 2009 WL 2157548, at *6 (N.D. Cal. July 17, 2009) (citing *Shakelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999) (denial of employee training does not constitute an adverse employment action covered by Title VII where it does not tend to result in a change of employment status, benefits or responsibilities)); *see also Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 710 (6th Cir. 2007) (holding that a "deprivation of increased compensation as the result of a failure to train constitutes an adverse employment action"); *Clegg v. Arkansas Dep't of Corr.*, 496 F.3d 922, 928 (8th Cir. 2007) (holding that denial of training does not constitute an adverse employment action

16

absent a further showing that it "had any impact on [the employee's] eligibility for benefits such as a promotion or pay raise").

As the Sixth Circuit explained in *Creggett v. Jefferson Cty. Bd. of Ed.*, 491 F. App'x 561 (6th Cir. 2012), in finding that the plaintiff had not established that failure to provide training was an adverse employment action:

> Creggett has proffered no evidence to suggest that either training was required or that failure to attend the training would result, or has resulted, in any demotion, loss of pay, loss of responsibility, or other materially adverse effect. . . .  Without evidence of this sort, mere denial of a supplemental training, even if other employees were allowed to attend the training, is not an adverse employment action.

*Creggett*, 491 F. App'x at 567 (citing *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 768 (6th Cir. 2008) ("Defendant's failure to provide plaintiff with extra training does not constitute an adverse employment action.")).  *See also Young v. CSL Plasma Inc.*, No. 15-cv-10080, 2016 WL 1259103, at *3 (E.D. Mich. Mar. 31, 2016) ("The 'mere denial of a supplemental training, even if other employees were allowed to attend the training, is not an adverse employment action' unless 'failure to attend the training would result, or has resulted, in any demotion, loss of pay, loss of responsibility, or other materially adverse effect.'") (quoting *Creggett*).

The same is true here.  As MGM asserts, attaching and citing to Plaintiff's deposition testimony (ECF No. 67, PageID.1196, 1203; ECF No. 74, PageID.1675-1676), she has provided no proof that any alleged denial of training resulted in a loss of pay or promotion, loss of responsibility, or change in employment status.

17

Indeed, beyond vaguely asserting that other employees had the opportunity to work special events because they had been training in plating (Pl. Dep. Trans., ECF No. 67-2, PageID.1232-1233)[2], and testifying that she needed the skills to be promoted or to get a job outside of MGM (ECF No. 67-2, PageID.1233-1234), she provided no evidence of material impact.  And these conclusory and speculative assertions are insufficient for Plaintiff's claim to survive summary judgment.  As the Sixth Circuit stated in *Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 345 (6th Cir. 2008):

> [A]lthough "a deprivation of increased compensation as the result of a failure to train constitutes an adverse employment action," *Clay* [], 501 F.3d [at] 710 [], Vaughn has failed to present any evidence that she was passed up for promotions because of her inability to attend the Leadership Institute training.  She only alleges that the training "would have . . . allow[ed] me to be able to be promoted to another position . . . when and if something else opened up."  But her own conclusory assertions as to the value of the training and her ability to receive promotions are insufficient to survive summary judgment. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008).

Accordingly, MGM is entitled to judgment as a matter of law on Plaintiff's claim that it discriminated against her on the basis of sex by denying her training opportunities afforded to similarly situated male employees.

---

[2] Plaintiff testified that, "I don't know exactly what they would do at the parties, because I was never involved, but just felt that I was being left out, and that I was missing out on some valuable training." (Pl. Dep. Trans at 89, ECF No. 67-2, PageID.1233.)  When pressed, she admitted that, "I don't know who else it was offered to, because it wasn't offered to me." (Pl. Dep. Trans. at 90, ECF No. 67-2, PageID.1233.)

**b.** **MGM is also entitled to summary judgment on Plaintiff's sex discrimination claim based on allegations related to overtime**

Plaintiff alleges that she was subjected to sex discrimination in violation of Title VII because she was denied overtime opportunities afforded to similarly situated male employees.  (ECF No. 1, ¶¶ 12, 24, 30, PageID.3-4; ECF No. 67-17; ECF No. 72, PageID.1415.)  MGM argues that Plaintiff cannot establish her *prima facie* case of sex discrimination on this basis because she has failed to demonstrate that a similarly situated person outside of her protected class received more favorable treatment related to overtime during the relevant time period – September 11 to December 4, 2014.  (ECF No. 67, PageID.1196-1197; ECF No. 74, PageID.1672-1673.)

The denial of overtime opportunities can constitute an adverse employment action.  *Broska v. Henderson*, 70 F. App'x 262, 267-68 (6th Cir. 2003).  However, to survive summary judgment, Plaintiff must establish a genuine issue of material fact that she was treated differently than similarly situated male employees with respect to overtime.

To satisfy the similarly situated requirement, a plaintiff must show that the comparator employee is similar "in all of the relevant aspects."  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).  The Sixth Circuit has described the "similarly situated" element as follows:

19

> To be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (internal quotations and citations omitted).  "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated."  *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004).

In her summary judgment response, Plaintiff asserts that she was denied overtime opportunities afforded to similarly situated male employees, including Jorden Wade, a fellow CU at MGM.  (ECF No. 72, PageID.1447-1449, 1455-1456.)  Indeed, as evidenced by BOH meeting notes attached to her response as well as to MGM's motion, Plaintiff complained of overtime issues in September and October 2014.  (Exhibits 4-6, ECF No. 72, PageID.1500-1504; *see also* ECF No. 67-11, 67-13, 67-16.)  Following her complaint at the September 25, 2014 meeting that she was not offered overtime on September 22, 2014 as were the employees of Cucina, *another restaurant in the casino which at the time had no CU* (Exhibit 4, ECF No. 72, PageID.1500), Plaintiff was awarded four hours of overtime pay at the union meeting on October 2, 2014 (Exhibit 5, ECF No. 72, PageID.1502).  And the notes for the October 30, 2014 BOH union meeting read:

> OT is not being offered to Barbrie.  There has been no replacement for
> the TM that left and OT is being offered to Sous Chef's but not to her.
> On 10/28/14 Jorden Wade a CU was called in for 3 hours of OT the
> day before Sweetest Day to do prep work for the next day.  Barbrie
> feels she is being overlooked for OT and also learning other areas of
> food prep.  OT should be posted for TM to sign up for OT.

(ECF No. 67-16.)

Despite Plaintiff's complaints, however, an attendance and overtime analysis produced by MGM in support of the instant motion demonstrates that from September 11, 2014 to December 4, 2014, the time period at issue, Plaintiff worked 20.75[3] hours of overtime while Wade worked 17.75.[4]  (ECF No. 67-15; Exhibit 6, ECF No. 72, PageID.1504.)  And Plaintiff offers nothing to address or rebut that evidence beyond her declaration, which simply asserts that Wade was given more overtime opportunities than her.  (Exhibit 8, ECF No. 72, PageID.1541, 1545, 1563.)  Instead, she attached to her response overtime records for male MGM employees McKenzie Smith and James Northern (Exhibit 14, ECF No. 72-1, PageID.1586-1594), both of whom were cooks, *not CUs*, and thus not similarly situated to Plaintiff.  (*see* ECF No. 67-2, PageID.1241; ECF No. 67-15,

---

[3] MGM mistakenly asserts in its reply brief that Plaintiff worked 21.75 hours of overtime during the relevant time period.  (ECF No. 74, PageID.1672-1673.)

[4] Wade's total includes eight hours of overtime worked on October 28, 2014.  The October 30, 2014 BOH union meeting notes indicate that Wade worked three hours of overtime at Cucina on October 28, 2014, but Plaintiff herself handwrote that he actually worked eight hours of overtime that day.  (Exhibit 6, ECF No. 72, PageID.1504.)

PageID.1395, 1397, 1399, 1402, 1405.)  *Leadbetter*, 385 F.3d at 691 ("Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated.").  Moreover, the simple fact that Plaintiff was paid for four hours of overtime after her September complaints, or that a sign-up sheet for overtime was implemented after she complained that Wade was given overtime on October 28, 2014, do not create a genuine issue of material fact that she was given fewer overtime opportunities than similarly situated male employees.

Accordingly, the Court should find that Plaintiff has failed to establish a *prima facie* case of sex discrimination on the basis of overtime, and that MGM is entitled to judgment as a matter of law on that claim.

### c.    Job Responsibilities

Finally, Plaintiff claims sex discrimination in violation of Title VII based on allegations that she was given more burdensome tasks and subjected to derogatory treatment in comparison to similarly situated male employees.  (ECF No. 1, ¶¶ 9, 12-22, 25-26; ECF No. 67-17; ECF No. 72, PageID.1415.)  From Plaintiff's summary judgment response and the documents attached, as well as her deposition

testimony attached to MGM's motion, it appears Plaintiff's specific allegations related to this claim, narrowed to the relevant time period,[5] are as follows[6]:

- More stock was ordered to be put away on the days she worked in comparison to Wade, and/or she received less help than Wade in putting away stock.  (ECF No. 67-2, PageID.1228-1229, 1257-1258; Exhibit 8, ECF No. 72, PageID.1532-1535.)

- On November 8, 2014, Chef Derek berated her for asking him to resolve a disagreement between her and Wade as to *whose turn it was to prepare the potato puree*, a burdensome task she was given more often than her male counterpart.  (ECF No. 67-2, PageID.1225-1227, 1229; Exhibit 8, ECF No. 72-1, PageID.1539-1540.)

- On November 13, 2014, a BOH union meeting was abruptly adjourned before she could speak.  (ECF No. 72-1, PageID.1539.)

Although the assignment of more burdensome tasks may amount to an adverse employment action, *Bush v. Lumileds, LLC*, 2018 WL 4610867 (E.D. Mich. Sept. 26, 2018) (citing *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)), the Court should find that, even viewing the allegations in a light most

---

[5] Plaintiff makes specific assertions of more burdensome job responsibilities and derogatory comments throughout her summary judgment response, but many of them allegedly occurred prior to the relevant time period.  Further, for many, she cites to pages of her attached declaration that either do not exist, or do not say what she purports them to.

[6] To develop this list, I relied on the specific assertions Plaintiff makes in her response, rather than scouring the entire 64-page declaration to which she often cites generally throughout her brief.  *Thomas v. Abercrombie & Fitch Co.*, 301 F.Supp.3d 749, 754 (E.D. Mich. 2008) ("The Court has no duty to scour the record to find factual support for a party's claims.").

favorable to Plaintiff, she has failed to establish any adverse employment action on the basis of the above assertions.  Each can be characterized as nothing more than a mere inconvenience or simple alteration of job duties, *Bowman*, 220 F.3d at 461, with no discernable relationship to sex beyond Plaintiff's unsupported personal belief that she was treated differently than male employees.  For example, Plaintiff testified that she was often asked to put away more stock than Wade, her male CU counterpart, and that there was always more stock to put away when Wade was not there, but admitted that she had no way of knowing whether Wade had to do the same when she was not there.  (ECF No. 67-2, PageID.1228-1229.)  And she claims that Chef Derek yelled at her rather than Wade on November 8, 2014 with regard to whose turn it was to make the potato puree, but she also testified that it was she who asked Chef Derek to resolve the dispute rather than arriving at a resolution amongst themselves.  (ECF No. 67-2, PageID.1225-1229.)  *See Watson v. City of Cleveland*, 202 F. App'x 844, 854 (6th Cir. 2006) (holding that a plaintiff's personal belief that she suffered from adverse employment actions motivated by sex are insufficient to avoid summary judgment).  Further, even if assumed true, one incident of being interrupted at a union meeting (ECF No. 72-1, PageID.1539) does not amount to a significant change in employment status or benefits.  *White*, 533 F.3d at 402.  Accordingly, Plaintiff has failed to establish a *prima facie* case of sex discrimination on the basis of job responsibilities and

derogatory treatment, and MGM is entitled to judgment as a matter of law on this claim.

### 3.   Plaintiff's claim of retaliation

Plaintiff also claims she was retaliated against in violation of Title VII in the form of fewer training and overtime opportunities and more burdensome job tasks, although the exact basis of her allegations is unclear.  In her EEOC Charge, she stated: "In or around March 2014, I served as union representative for a coworker filing a complaint of discrimination based on his national origin.  In or around September 2014 and up through the end of my employment in December 2014, I was repeatedly denied overtime and opportunities for advancement in my position."  (ECF No. 67-17; ECF No. 72, PageID.1415.)  But in her complaint, she alleges generally that "Defendant retaliated against [her] for having complained about Defendant's discriminatory employment practices . . . in violation of Title VII."  (ECF No. 1, ¶ 36, PageID.5.)  Then in her summary judgment response, Plaintiff appears to combine the two theories of retaliation, asserting both that she represented others in grievances involving discrimination which led to retaliation (ECF No. 72, PageID.1444), and that following her own personal October 30, 2014 overtime grievance and the "potato puree incident" on November 8, 2014, she "was subjected to continued disparate treatment in retaliation for [her]active representation of herself and others in union meetings" (ECF No. 72, PageID.1445,

1456-1457). [7]  Regardless, for the reasons that follow, the Court should find that

Plaintiff has failed to establish a *prima facie* case of retaliation in violation of Title

VII.

> The elements of a retaliation claim are similar but distinct from
> those of a discrimination claim.  To establish a *prima facie* case of
> retaliation under Title VII, Plaintiff must demonstrate that: "(1) he
> engaged in activity protected by Title VII; (2) his exercise of such
> protected activity was known by the defendant; (3) thereafter, the
> defendant took an action that was "materially adverse" to the plaintiff;
> and (4) a causal connection existed between the protected activity and
> the materially adverse action."  *Jones v. Johanns,* 264 Fed.Appx. 463,
> 466 (6th Cir. 2007) (citing *Abbott v. Crown Motor Co., Inc.,* 348 F.3d
> 537, 542 (6th Cir. 2003)[.]

*Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).  Retaliation may

apply to "not only the filing of formal discrimination charges with the EEOC, but

also complaints to management and less formal protests of discriminatory

employment practice."  *Id*. at 729-730.  MGM asserts that Plaintiff failed to

demonstrate any of the elements of a *prima facie* case of retaliation, but the Court

need only focus on the third and fourth elements –that MGM took a materially

adverse action against Plaintiff and that a causal connection existed between any

protected activity and that materially adverse action.

"The 'materially adverse action' element of a Title VII retaliation claim is

substantially different from the 'adverse employment action' element of a Title VII

---

[7] Plaintiff also discusses retaliation for union activities well prior to the relevant
time period.  (ECF No. 72, PageID.1443-1444.)

[sex] discrimination claim." *Laster*, 746 F.3d at 719. To establish this third element of a *prima facie* retaliation claim under Title VII, a plaintiff need only show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 731 (quotation marks and citations omitted). Thus, the "burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context." *Id.* (internal quotation marks and citations omitted).

However, for the same reasons as described in great detail above, Plaintiff fails to make out a *prima facie* case of retaliation in violation of Title VII because she has presented insufficient evidence to create a genuine issue of material fact that MGM took materially adverse actions against her with respect to overtime or job responsibilities. Again, the record evidence demonstrates that she received more overtime hours than Wade during the relevant time period (ECF No. 67-15; Exhibit 6, ECF No. 72, PageID.1504), that her overtime issues were addressed and resolved at union meetings, and that her allegations of more burdensome job responsibilities amounted to mere inconveniences at most.[8] Thus, I cannot

---

[8] In addition to potato puree and stocking duties, Plaintiff complained at her deposition of having to crack more crab legs than Wade and having to make Oyster Rockefeller sauce more often than male counterparts. (ECF No. 67-2,

27

conclude that a reasonable employee would have found the same actions materially adverse.

Further, to the extent Plaintiff alleges that she received fewer training opportunities as a form of retaliation, she fails to overcome summary judgment. Defendant asserts that Plaintiff "cannot show causation." (ECF NO. 67, PageID.1200.) *See* Fed. R. Civ. P. 56(c)(2). Even assuming, *arguendo*, that Plaintiff did in fact receive fewer training opportunities than other employees, she has failed to support her assertion of a causal connection between the lack of opportunities and any alleged protected activity. *Laster*, 746 F.3d at 730; *see* Fed. R. Civ. P. 56(e).

"Title VII retaliation claims 'must be proved according to traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Laster*, 746 F.3d at 731 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, ___; 133 S.Ct. 2517, 2533; 186 L.Ed.2d 503 (2013)); *see*

---

PageID.1227-1228.) Even if true, these can hardly be considered materially adverse actions. *See Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x 424, 432 (6th Cir. 2007) ("The purpose of Title VII's anti-retaliation provisions is to prohibit 'employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers,' and 'normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.'") (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 2415, 165 L.Ed.2d 345 (2006)).

*also Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014) ("'R]etaliation claims under Title VII require traditional but-for causation, not a lesser "motivating factor" standard of causation.'" (*quoting Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir. 2013) (*citing Nassar*, 133 S.Ct. at 2534).  In her EEOC Charge, Plaintiff stated that in March 2014, she served as a union representative for a coworker filing a complaint of discrimination, and then from September to December 2014, was repeatedly denied opportunities for advancement (ECF No. 67-17; ECF 72, PageID.1415), and she makes a similar claim in her complaint (ECF No. 1, ¶¶ 14, 24, 36, PageID.3-5).  In her summary judgment response, however, Plaintiff discusses training and protected activity, but does not directly connect the two with specific dates or actors, nor provide citation to the record in support of her claim that MGM retaliated against her by denying her training opportunities.

Nevertheless, even looking through the documents attached to the summary judgment motion and Plaintiff's response, Plaintiff fails to establish a causal connection between any protected activity and denial of training opportunities and, thus, a *prima facie* case of retaliation under Title VII.  In her declaration, she stated that she attended several BOH Union Meetings from September to November 2014 and repeatedly complained about training opportunities (Exhibit 8, ECF No. 72, PageID.1545), which is borne out by the minute notes for an October 30, 2014

29

union meeting attached to Plaintiff's response (ECF No. 72, PageID.1504), and she

testified at her deposition that she was denied training opportunities (ECF No. 67-

2, PageID.1231-1234), but a review of both the declaration and deposition

transcripts reveal no specific connection between those complaints and the denial

of training opportunities, either temporally[9] or otherwise.  She never states, for

example, that anyone in attendance at the October 30, 2014 union meeting in

which she complained about a lack of training opportunities or any other person

with knowledge of her alleged protected activity contributed to the decision to

deny her training during the relevant period.  And without more than the

conclusory allegations that she participated in protected activity, and was denied

training opportunities in retaliation, Plaintiff cannot establish a but-for causal

connection between the two.

Accordingly, the Court should conclude that, even viewing the evidence in a

light most favorable to Plaintiff, she has failed to establish a *prima facie* case of

retaliation in violation of Title VII, and MGM is entitled to summary judgment on

that claim.  There is no genuine issue of fact regarding whether Plaintiff suffered a

materially adverse action as a result of her participation in protected activity.

---

[9] Further, to the extent Plaintiff makes a general temporal proximity argument with regard to retaliation (ECF No. 72, PageID.1456-1457), "[t]emporal proximity alone generally is not sufficient to establish causation."  *Kenney v. Aspen Technologies, Inc.*, 965 F.3d 443, 448-449.

### 4.     Constructive Discharge

Should the Court agree with my recommendation that Plaintiff has failed to

establish a *prima facie* case of sex discrimination or retaliation under Title VII, her

argument that she was constructively discharged (ECF No. 72, PageID.1446-1449)

also fails.

"A constructive discharge occurs when the employer, rather than acting

directly, deliberately makes an employee's working conditions so intolerable that

the employee is forced into an involuntary resignation." *Laster*, 746 F.3d at 727

(internal quotations and citations omitted).  "To demonstrate a constructive

discharge, Plaintiff must adduce evidence to show that 1) the employer deliberately

created intolerable working conditions, as perceived by a reasonable person, and 2)

the employer did so with the intention of forcing the employee to quit." *Id*. at 727-

28.

Plaintiff asserts in her summary judgment response that she was

constructively discharged.  Specifically, she states:

> Plaintiff has suffered embarrassment, was ostracized, subjected to
> verbal attacks and intimidation, missed overtime opportunities, denial
> of on-the-job training, denial of promotional opportunities, and males
> were given more overtime opportunities, on-the-job training, and
> routinely assigned more favorable job assignments.  It is for the jury
> as trier of fact to determine whether [MGM's] sex-based
> discrimination and subsequent retaliation rendered Plaintiff's work
> environment unbearable, compelling her to resign.

(ECF No. 72, PageID.1448-1449 (citation omitted).)  However, "[c]onstructive discharge is not a standalone claim; rather, it is a means of proving the adverse action element of a prima facie discrimination case."  *Gosbin v. Jefferson Cty. Commissioners*, No. 2:14-cv-2640, 2017 WL 5653503, at *9 (S.D. Ohio Mar. 29, 2017) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 567 (6th Cir. 2001)).  Indeed, a plaintiff must show more than a Title VII violation to prove constructive discharge. *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999).  It follows, then, that because Plaintiff has failed to establish a *prima facie* case of either sex discrimination or retaliation under Title VII, her assertion that she was constructively discharged also fails.  And contrary to Plaintiff's hyperbolic assertion, I cannot conclude, nor do I find that a reasonable juror would conclude, that "[a]ny reasonable person in Logan's shoes would similarly have been compelled to resign as a result of enduring the insufferable working conditions Plaintiff was forced to accept." (ECF No. 72, PageID.1447.)

    **D.   Conclusion**

    The Court should **GRANT** Defendant's motion for summary judgment (ECF No. 67).  However, the Court should **DENY** Defendant's request for an award of costs and attorney fees associated with this motion (ECF No. 67, PageID.1177,1206), as it cites no legal basis for the request.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("'[I]ssues adverted to in a

32

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'") (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)) (citation omitted).  Furthermore, the award of attorney fees and costs under Title VII is within the Court's discretion, 42 U.S.C. § 2000e-5(k), and Plaintiff's claims were not frivolous, unreasonable, groundless, or brought in bad faith.  *See E.E.O.C v. Peoplemark, Inc.*, 732 F.3d 584, 590-91 (6th Cir. 2013); *Patterson v. United Steelworkers of America*, 381 F.Supp.2d 718, 721 (N.D. Ohio, 2005) ("[I]t is clear that just because a plaintiff in a civil rights case loses on summary judgment does not mean that the case was frivolous or brought in violation of the standard quoted above.  It is possible, even probable, that a plaintiff had well founded beliefs of being wronged, but was unable to sustain the burden required at law to sustain his position and avoid an adverse result on a motion for summary judgment.").

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 24, 2020          s/*Anthony P. Patti*
                                Anthony P. Patti
                                UNITED STATES MAGISTRATE JUDGE